UNITES STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
THE NEW YORK DISTRICT COUNCIL OF
CARPENTERS PENSION FUND, NEW YORK
CITY DISTRICT COUNCIL OF CARPENTERS
WELFARE FUND, NEW YORK CITY DISTRICT
COUNCIL OF CARPENTERS VACATION
FUND, NEW YORK CITY DISTRICT COUNCIL
OF CARPENTERS ANNUITY FUND, NEW
YORK CITY DISTRICT COUNCIL OF
CARPENTERS APPRENTICESHIP,
JOURNEYMAN RETRAINING, EDUCATIONAL
AND INDUSTRY FUND, NEW YORK CITY            07-CV-08008 (RJS)
DISTRICT COUNCIL OF CARPENTERS
CHARITY FUND, by their Trustees Michael J.
Forde and Paul O'Brien, and NEW YORK CITY
AND VICINITY CARPENTERS LABOR-
MANAGEMENT CORPORATION,

       Plaintiffs,

 -against-

KW CONSTRUCTION INC., as Successor to K W
GENERAL CONTRACTOR, INC. and JOHN
WHYTE d/b/a KW CONSTRUCTION, INC., and
JOHN WHYTE, individually,

       Defendants.
------------------------------------------------------------X


STATE OF NEW YORK )
         ) ss:
COUNTY OF NEW YORK )

GREGORY J. POLVERE, being duly sworn, deposes and says:

1. I am the President and CEO of GJP & Associates Inc., P.O. Box 981 Harriman, New York 10926.

2. My key areas of expertise relevant to this affidavit are as follows: (a) Qualified in the United States District Court for the Eastern District of New York by Judge Sterling Johnson for testimony in case CR-031085 (SJ) (the testimony pertained to various money laundering methods, their level of sophistication, analysis of tax returns and financial investigative methods); (b) Twenty Seven years employment by the Internal Revenue Service, five years as Revenue Agent (Auditor), twenty two years as a Special Agent (Criminal Investigator); (c) Certified Fraud Examiner (CFE) by the Association of Certified Fraud Examiners; (d) Enrolled Agent, licensed by the IRS to practice and represent taxpayers and business entities in all maters before the IRS; (e) designated as Independent Private Sector Inspector General (IPSIG) in October 2002 by the New York City Business Integrity Commission and the New York City Department of Investigation that made this determination in awarding a contract for the monitorship of firms doing business with New York City; (f) Licensed Private Investigator in New York State; (g) Publications - Greater New York Auto Dealers Association, March 1999; *Compliance Programs Can Save you Money.*

## CASE BACKGROUND

3. Deponent was retained to conduct a forensic accounting review and

investigation of the financial records of KW Construction Inc. ("KW").

4. KW is signatory to a collective bargaining agreement ("the Agreement") with the District Council of New York City and Vicinity of the United Brotherhood of Carpenters and Joiners of America ("the District Council") which requires KW to contribute a certain sum to the District Council's affiliated fringe benefit funds ("the Funds") for each hour worked by carpenters in KW's employ.

5. In 2003, the Funds audited KW's books and records and discovered a delinquency in KW's benefit fund contributions. KW failed to pay said delinquency, which resulted in a judgment against KW ("the 2005 Judgment"), in the amount of $200,675.09.

6. In the course of supplemental proceedings to enforce the 2005 Judgment, records that KW had failed to produce during the audit were subpoenaed from third parties.

7. Documents reviewed in the course of my audit of KW include:

- The collective bargaining agreement between KW and the District Council; shop steward reports from KW jobsites; and KW's history of contribution remittances to the Funds.

- Audit notes and materials from the Funds previous audit of KW to ensure compliance with the collective bargaining agreement.

- Bank records from twelve accounts owned by KW, John Whyte ("Whyte"), and related companies KW Construction of Tri State Inc. and TWG Enterprises of USA Inc. These bank accounts were

- produced pursuant to third party subpoenas in the course of attempting to enforce the 2005 Judgment, and had not previously been produced by Whyte as required by the Agreement.

- Tax returns, including KW's payroll tax returns, John Whyte's personal tax returns, and the corporate tax returns of related company KW Construction of Tri State Inc. These tax filings were produced pursuant to third party subpoenas in the course of attempting to enforce the 2005 Judgment, and had not previously been produced by Whyte as required by the Agreement.

- Westchester County property records.

## PRELIMINARY FINDINGS

8. The audit currently being conducted by GJPA audit covers the time period of January 1, 2000 to June 30, 2005.

9. Two of the twelve bank accounts that were produced by third parties were owned directly by "KW Construction Inc." These are Country Bank account number 1204080, and Union Savings Bank account number 596001900.

10. Based on a review of these two accounts alone, my audit reveals a preliminary delinquency of $1,114,185.18 in fringe benefit fund contributions.

11. It was found through analysis of these accounts that KW engaged in substantial fraudulent activities against the Funds by hiding or otherwise misrepresenting their books and financial records.

12. Specifically, the Country Bank and Union Savings Bank accounts were used to pay for significant "off the books" payroll that was not reported to the Funds. The required fringe benefit contributions were not made for the hours worked by carpenters who were paid from these accounts.

13. The Country Bank and Union Savings Bank accounts analyzed reflected off the books payments to over one hundred (100) carpenters.

14. The delinquency referenced in Paragraph 10, above, was calculated by comparing these payments with KW's benefit fund contribution remittance history.

## INTENT TO DEFRAUD THE BENEFIT FUNDS

15. A review of the audit notes for the initial payroll audit that produced the 2005 judgment disclosed that on August, 27, 2003, Mr. Whyte's accountant, Walid Farhat, refused to provide the auditors with the payroll records previously examined by them and cash disbursements journals that would have disclosed the Union Saving Bank and Country Bank accounts.

16. As a result of KW's refusal to provide all of its books and records to the Funds auditors, the KW accounts at Country Bank and Union Savings Bank

were never discovered, and the audit findings that resulted in the 2005 Judgment were based solely upon shop steward reports.

17. The concealment of the KW operating accounts at Union Savings Bank and Country Bank and the corresponding Cash Disbursements Journals from the Funds' auditors was in furtherance of the scheme to defraud the Funds, the Union and its members.

### DOMINATION OF KW BY WHYTE AND DISREGARD FOR CORPORATE FORMALITIES

18. The financial records produced indicate that John Whyte dominated KW, co-mingled personal and corporate funds, and used corporate funds for his personal benefit.

19. Whyte used KW's accounts at Country Bank and Union Savings Bank to divert significant amounts of business assets for his personal benefit.

20. The bank account records show that for the years 2000 through 2004, Mr. Whyte used at least $149,913.36 in company funds to pay for construction and renovation of his personal residences at 330 Armonk Road, Mt. Kisco, New York, and 225 Millwood Road, Chappaqua, New York.

21. In addition to home improvements, he paid what appear to be personal credit card, cable television and utility bills with funds drawn on KW's business accounts.

22. Whyte also made monthly checks to Washington Mutual Bank from the KW's account at Union Savings Bank. Westchester County records show that this is the financial institution that holds the mortgage to Whyte's personal residence at 225 Millwood Road, Chappaqua, New York

23. While substantial expenditures were made from the KW accounts for the personal benefit of Mr. Whyte, the corporate and individual tax returns produced indicate that Whyte did not receive any officer compensation, salary, loans or dividends from KW.

24. Mr. Whyte had the ability to make significant personal expenditures from the KW's cash flow. He paid to improve his homes and pay for personal expenses from the savings he accrued from not satisfying the judgment or for funding the Carpenter benefit Funds for wages paid outside the detection of the original audit.

25. In diverting corporate funds for personal use, without accounting for any salary, loans or dividends, Whyte co-mingled personal and corporate assets, and he was able to do so because he dominated KW's finances.

_____
GREGORY J. POLVERE

Sworn to before me
this 6th day of March 2008

_____
NOTARY PUBLIC

ANGELA POLVERE
Notary Public, State of New York
No. 01PO6071770
Qualified in Orange County
Commission Expires March 25, 20 10

7