UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
THE NEW YORK DISTRICT COUNCIL OF
CARPENTERS PENSION FUND, NEW YORK CITY
DISTRICT COUNCIL OF CARPENTERS WELFARE
FUND, NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS VACATION FUND, NEW YORK
CITY DISTRICT COUNCIL OF CARPENTERS
ANNUITY FUND, NEW YORK CITY DISTRICT
COUNCIL OF CARPENTERS APPRENTICESHIP,
JOURNEYMAN RETRAINING, EDUCATIONAL
AND INDUSTRY FUND, NEW YORK CITY
DISTRICT COUNCIL OF CARPENTERS CHARITY         07-CV-08008 (RJS)
FUND, by their Trustees Michael J. Forde and Paul
O'Brien, and NEW YORK CITY AND VICINITY
CARPENTERS LABOR-MANAGEMENT
CORPORATION,

                                  Plaintiffs,

   -against-

KW CONSTRUCTION INC., as Successor to K W
GENERAL CONTRACTOR, INC. and JOHN WHYTE
d/b/a KW CONSTRUCTION, INC., and JOHN
WHYTE, individually,

                                 Defendants.
------------------------------------------------------------------X

This reply memorandum is submitted on behalf of plaintiffs in response to defendants' memorandum of law in opposition to plaintiffs' motion for an order of attachment. PlaintiffS moved this Court for an *ex parte* order of attachment on March 7, 2008. This motion was denied without prejudice to renew the request on notice, and plaintiffs did so renew the motion. Subsequently, the parties entered into a stipulation that defendants would not transfer their assets pending the hearing of plaintiffs' renewed motion.

## PRELIMINARY STATEMENT

Plaintiffs' memorandum in chief demonstrated that plaintiffs are entitled to an order of attachment against the property of defendants. To wit, the memorandum demonstrated that (1) plaintiffs have stated a claim for a money judgment; (2) plaintiffs have a probability of success on the merits; (3) defendant Whyte, with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiffs' favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts; and (4) the amount demanded from the defendants is greater than the amount of all counterclaims plaintiffs. *See, JSC Foreign Economic Ass'n Technostroyexport v. International Development and Trade Services, Inc.*, 2006 WL 1206372, *1 (S.D.N.Y. 2006).

## ARGUMENT

Defendants attack plaintiffs motion primarily by arguing that plaintiffs have failed to show (1) a likelihood of success on the merits, and (2) defendant Whyte's intent to defraud plaintiffs and frustrate the enforcement of a money judgment in this action. Both of these arguments are wholly without merit. While defendants argument that plaintiffs are not likely to prevail in this action is wrong in many ways which will be addressed below, it is chiefly flawed in that it misconstrues the applicable standard. On a motion for an order of attachment, plaintiffs are not required or expected to prove their entire case before the benefit of discovery. Rather, they need only put forward evidentiary facts that support a prima facie case and that have "some probative force." *Swiss Bank Corp. v. Eatessami*, 26 A.D.2d 287, 290 (N.Y.A.D. 1966). Plaintiffs have put forth ample evidentiary facts to prove a prima facie case. Plaintiffs' application is supported by far more than mere allegations and conclusory statements. These

evidentiary facts include the Polvere Affidavit and the records it is based on, which irrefutably show that KW is delinquent in benefit fund contributions, and the Rivera Affidavit which provides direct evidence of defendant Whyte's fraudulent intent with regard to not making those contributions. The fact the defendant Whyte now denies the truth of the sworn statements in the Rivera Affidavit – i.e., that defendant Whyte bribed the affiant Rivera as part of a scheme to defraud plaintiffs – is neither surprising nor detrimental to plaintiffs' motion. Indeed, on a motion such as this, "the truth of the facts stated may be assumed and plaintiff must be given the benefit of all legitimate inferences and deductions that can be made from the facts stated." *Id.* Plaintiffs clearly have made "a sufficient showing that the ultimate facts stated in the pleading can be substantiated...." *Id.*

## I.     PLAINTIFFS WILL SUCCEED ON THE MERITS

Defendants argue that plaintiffs will not prevail in this action because there was not binding collective bargaining agreement between the parties after 2001. In the alternative, defendants argue that there is no way to demonstrate that any of hours worked that relate to the deficiency found by the Funds' auditor were for work covered by the Agreement. It is further argued that defendant Whyte is not liable in his personal capacity because (1) corporate formalities were observed; (2) plaintiffs have not demonstrated the elements of fraud; and (3) a corporate agent whose simply signs a collective bargaining agreement on behalf of the corporation does not thereby bind himself personally. Defendants also argue that the specific assets listed in the parties stipulation maintaining the *status quo* pending the hearing of this motion should not be attached. All of these arguments are either meritless or irrelevant.

A.   <u>There was a Collective Bargaining Agreement in Effect at all Relevant Times</u>

Attached to the Hanlon Declaration as Exhibits 1, 2, and 3 are three collective bargaining agreements. Exhibit 3 ("the 1996 Agreement") covers a term running from July 1, 1996 to June 30, 2001. Exhibit 1 ("the 2001 Agreement") covers a term running from July 1, 2001 to June 30, 2006. Defendants' argument that there was no agreement between the parties after June 30, 2001 is based on the fact that the 2001 Agreement is not signed. This argument ignores Exhibit 3. Exhibit 3 is the "Interim Agreement," and Defendant Whyte does not deny that he signed this document. The Interim Agreement extended the terms of the 1996 Agreement until such point as a successor agreement was reached between the Union and certain employer associations. It further bound KW under the successor agreement when that agreement was reached. KW was furnished with a copy of the successor agreement, i.e., the 2001 Agreement (Exhibit 1). While Whyte neglected to sign and return a copy of the 2001 Agreement to the Union, it had already agreed to adopt that agreement by signing the Interim Agreement, which provides that "our firm shall be bound to the terms contained in the New Agreement(s) retroactive to July 1, 2001, by virtue of executing this agreement, regardless of whether it actually executes a successor agreement" (Interim Agreement at Article V). The validity and enforceability of the exact same Interim Agreement was affirmed by this court in a well reasoned opinion by the Honorable Robert W. Sweet. *See, Seabury Construction Corp. v. District Council of Carpenters*, 461 F. Supp.2d 193, 196-98 (SDNY 2006); Docket No. 06 CV 2282 (RWS).

Even if KW had not executed the Interim Agreement it would be bound by the 2001 Agreement because it adopted that Agreement by virtue of its conduct, i.e., performing (albeit imperfectly) under that Agreement, and availing itself of the benefits of that Agreement for at least four years. "A CBA does not have to be signed by an employer to be effective." *Id.* at 198.

4

KW complied with the 2001 Agreement by reporting hours worked by its employees and remitting the proper benefit fund contributions on their behalf until at least 2005 – of course, KW did not report all the hours worked, which is the reason plaintiffs commenced this action. Indeed, defendant Whyte admits as much when he complains that he was not given credit for contributions that did make. Furthermore, Whyte complied (again, imperfectly) with the audits that were required under the 2001 Agreement, and he complied with the grievance and arbitration provisions of the 2001 Agreement. At no point during the arbitration proceedings that took place in 2005, and which concerned KW's compliance with the Agreements from 2000 through 2003, did Whyte assert that there was no agreement in effect after 2001.

B.    The Payroll Hours Represented in the Audit were for Covered Work

Defendants argue that there is no way to prove to that the secret payroll uncovered in supplemental proceedings was used to pay carpenters for performing covered work – i.e., work hours for which contributions must be remitted to the Funds. However, Defendants concede in the Whyte Declaration and in their Opposition Memorandum that at least some of these hours were for covered work. Defendant Whyte states "I believe may of the hours picked up by the District Council auditor had to do with work performed in Westchester County or paid to painters, tapers, steelworkers, laborers or other individuals not covered by the New York District Council collective bargaining agreements." (Whyte Declaration at ¶ 7) Thus, defendant Whyte's weakly worded defense is actually an admission that some of the hours worked were covered. It is plaintiffs belief that further discovery will demonstrate that nearly all of those hours were covered, but that is not relevant at this juncture. For now, it suffices that plaintiffs have shown that they have a cause of action for money damages, and that they will prevail on the

merits. It should be further noted that pursuant to ERISA's burden shifting provisions, defendants such as KW are liable for all payroll hours if they fail or refuse to produce records that will indicate which hours are for covered work and which are not. *See, e.g., Michigan Laborers' Health Care Fund v. Grimaldi Concrete*, 30 F.3d 682, 697 (6th Cir. 1994) (holding that where "it is impossible to determine with any precision the amount of contributions due to the Funds ... an employer is liable for contributions on all hours worked during a period in which it has been demonstrated that some covered work was performed.").

C.   Defendant Whyte is Personally Liable for KW's Delinquency

Each of defendants' arguments regarding Whyte's personal liability is without merit. While defendants argue that KW's corporate veil should not be pierced to reach Whyte, it is most telling that they never directly address plaintiffs' argument that would render the corporate veil analysis meaningless: that KW isn't and never was a corporation in the first place. No certificate of incorporation has been produced, and it can be inferred that none exists, at least for the purpose of assessing plaintiffs' likelihood of success on their claim. There is no reason to believe that KW ever availed itself of the limited liability laws of any jurisdiction. As discussed in plaintiffs' memorandum in chief, while KW held itself out to be a New York corporation, there is no such entity listed in the New York Department of State corporate database. Nor is there any reason to believe that the dozen or so "KW Constructions" incorporated over the past 40 years across the country bear any relation to defendants.

Defendants argue that even if KW was dominated by Whyte – as plaintiffs have demonstrated – that its "corporate" veil should not be pierced because it was not incorporated *for the purpose* of defrauding the Funds. Defendants again misstate the applicable standard. New York courts "will disregard the corporate form, or, to use accepted terminology, pierce the

6

corporate veil, whenever necessary to prevent fraud or to achieve equity." *Careccia v. Macrae*, 2005 WL 1711156, *2 (E.D.N.Y. 2005). It is not necessary that Whyte incorporated KW as part of a scheme to defraud the Funds. It is enough to show that he abused the corporate form as a part of his fraud against the Funds. Plaintiffs have clearly shown this: Whyte used his total domination over KW to deposit payments from clients into his personal accounts. (Polvere Affidavit). These payments should have been used, in part, to pay the pension fund contributions of KW's employees.

Furthermore, even if KW is an actual corporation and the corporate veil is not pierced, Whyte is liable in his personal capacity because, as an officer and agent of KW, he personally committed the fraud against the funds. The Rivera Affidavit alone is enough to establish that plaintiffs are likely to prevail on their fraud claim against Whyte. The Rivera Affidavit is an evidentiary fact of sufficient probative force showing that Whyte bribed his employee to falsify a document which was submitted to the Union and upon which the Funds detrimentally relied in assessing KW's liability.

Defendants also cite cases that hold that a corporate principal is liable under a collective bargaining agreement simply because he signs that agreement *on behalf* of the corporation. Plaintiffs do not contend otherwise. They do not seek to impose personal liabily on Whyte because he signed the agreement, rather because he *is* KW's alter ego.

## II. DEFENDANT WHYTE'S INTENT TO DEFRAUD THE FUNDS HAS BEEN ADEQUATELY DEMONSTRATED

An order of attachment should be issued as plaintiffs have demonstrated that defendant Whyte has in the past and is currently attempting to transfer assets beyond the reach of plaintiffs

in an effort to frustrate the judgment that will inevitably result from this action. Plaintiffs have demonstrated far "more than a mere suspicion" that defendant Whyte intends to frustrate the collection of any judgment obtained. Plaintiffs have also demonstrated far more than Whyte's past and immediate efforts to dispose of property – they have shown that each of these transfers followed on the heals of attempt by the Funds to collect KW's delinquency, and that most the transfers occurred under highly suspicious circumstances, such as transfers of highly valuable properties for no consideration. Indeed, transfers by a defendant, including a defendant in an arbitration proceeding, which are accomplished without fair consideration are fraudulent as a matter of law under New York's Debtor Creditor Law. DCL § 273-a.

While plaintiffs have direct evidence for Whyte's fraudulent intent with respect the underlying fraud at issue in this case, the evidence for Whyte's intent to defraud plaintiffs by frustrating the enforcement of any judgment obtained is circumstantial in nature. This is to be expected, as defendants are not prone to advertise their fraudulent intent, and a finding a smoking gun like the Rivera Affidavit very uncommon. *See, Bank Leumi*, 892 F.Supp. 478, 483 (SDNY 1995) (noting that "[i]t is not always practicable to establish by proof the existence of a fraudulent intent ... even when in reality it exists. Direct proof of the fact can rarely be obtained, and when it is established it must ordinarily be inferred from the circumstances."); *JSC Foreign Economic Ass'n Technostroyexport v. International Development and Trade Services, Inc.*, 306 F.Supp.2d 482, 487-88 (S.D.N.Y. 2004) ("Because direct evidence of an intent to defraud or to frustrate the enforcement of a judgment is rare, the intent required under C.P.L.R. § 6201(3) is usually inferred from the circumstances.")

This case is on all fours with in *JSC Foreign Economic Ass'n Technostroyexport v. International Development and Trade Services, Inc.*, 2006 WL 1206372, 1 (SDNY, 2006), in

which this court held that a order of attachment should issue. In that case, after restraining notices had been served on the defendant, she shifted over a million dollars into a Merrill Lynch account in an associate's name, but under [her] control. The court found that "[t]he circumstances of [the defendant's] conduct ... amply support a finding that [she] acted with actual intent to frustrate the enforcement of a judgment against her." *Id.*

Likewise, on the day before defendant Whyte failed to appear at the last arbitration hearing and, as a result, an arbitration award was issued against KW, he transferred $462,000.00 to EMC of Tri-State (see Exhibit 8 annexed to the Hanlon Declaration), a corporation that he owns and controls. (Whyte Declaration at ¶ 3).

### III.   MISCELLANEA

A.   The Court has Subject Matter Jurisdiction over this Action.

Since the CBA was in effect at all relevant time periods, as demonstrated above, and since defendants admit that there was a CBA in effect through June 30, 2001, the Court has subject matter jurisdiction. The NLRB only has exclusive jurisdiction over cases involving continuing obligations under an expired contract when those obligations arise as a matter of law (specifically, when those obligations arise pursuant to the National Labor Relations Act, the law that the NLRB is charged with administering), not when they arise as a matter of contract.

B.   The Alleged Owners of the Various Properties
     Specified in the Parties Stipulation are not Necessary Parties.

Plaintiffs do not seek an order of attachment against any particular asset of defendant Whyte or defendant KW. Rather, plaintiffs seek a general order of attachment against the

property of defendants. If such an order is granted, plaintiffs will make use of CPLR Article 62's discovery and disclosure procedures to identify defendants' assets. These procedures, such as those provided for in CPLR §§ 6219 and 6220 are only available *after* an order of attachment has issued. The assets and properties listed in the parties' stipulation maintaining the *status quo* were the result of plaintiffs' attempts to identify defendants' assets prior to obtaining an attachment order, and they may not be the assets attached after an order is issued.

## CONCLUSION

For the forgoing reasons, plaintiffs' motion for an order of attachment should be granted.

Dated:     New York, New York
           March 27, 2008

                                        Respectfully submitted,

                                        O'DWYER & BERNSTIEN, LLP

                                        */s/ Nicholas Hanlon*
                                        By: NICHOLAS HANLON (NH 0001)
                                        Attorneys for Plaintiffs
                                        52 Duane Street, 5th Floor
                                        New York, New York 10007
                                        (212) 571-7100