UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
THE NEW YORK DISTRICT COUNCIL OF
CARPENTERS PENSION FUND, NEW YORK
CITY DISTRICT COUNCIL OF CARPENTERS
WELFARE FUND, NEW YORK CITY DISTRICT
COUNCIL OF CARPENTERS VACATION
FUND, NEW YORK CITY DISTRICT COUNCIL
OF CARPENTERS ANNUITY FUND, NEW
YORK CITY DISTRICT COUNCIL OF
CARPENTERS APPRENTICESHIP,
JOURNEYMAN RETRAINING, EDUCATIONAL
AND INDUSTRY FUND, NEW YORK CITY        07-CV-08008 (RJS)
DISTRICT COUNCIL OF CARPENTERS
CHARITY FUND, by their Trustees Michael J.
Forde and Paul O'Brien, and NEW YORK CITY
AND VICINITY CARPENTERS LABOR-
MANAGEMENT CORPORATION,

                     Plaintiffs,

    -against-

KW CONSTRUCTION INC., as Successor to K W
GENERAL CONTRACTOR, INC. and JOHN
WHYTE d/b/a KW CONSTRUCTION, INC., and
JOHN WHYTE, individually,

                     Defendants.
------------------------------------------------------------X

       PHIL GIUDICE, declares as follows under penalty of perjury pursuant to 28

U.S.C. 1746:

       1.    I am employed by the New York City District Council of Carpenters

Benefit Funds in the Contract Administration Office. This Office keeps track of

and maintains contractual documents and related paperwork involving companies

that have collective bargaining relationships with the District Council for New York

City and Vicinity of the United Brotherhood of Carpenters and Joiners of America ("District Council").

2. Generally, the District Council has two types of collective bargaining agreements: those with multi-employer associations, and those with independent employers who are not members of any association.

3. As a part of my job, and in the regular course of business, I am familiar with all of the District Council's various contracts with both independent employers and the multi-employer associations.

4. The District Council negotiates collective bargaining agreements with multi-employer associations. These agreements set the terms and conditions of employment for union carpenters in New York City, and they are binding on the members of the multi-employer associations.

5. The District Council and the multi-employer associations generally negotiate contracts for five year terms, and this rule held true for the contracts that were negotiated for the period of July 1, 2001 to June 30, 2006 ("the 2001-2006 agreements").

6. Normally, and in the case of the 2001-2006 agreements, the agreements provide that the total wage and benefits package (the "total package," that is, the combined total hourly rate for carpenters including both the wages paid to the carpenter and the contributions made on behalf of the carpenter to various fringe benefit trust funds) will increase periodically throughout the term of the five-year contract. While each increase in the total package specified in the agreements,

the proportional allocation of the package between wages and fringe benefit fund contributions is determined at a later date. The agreements, including the 2001-2006 agreements, provide that this proportional allocation between fringe benefit fund contributions and wages is within the sole discretion of the District Council. Thus when a contract is negotiated, signatory employers know how much it will cost per hour to employ a carpenter throughout the life of the five year contract, but they don't necessarily know how much of that cost will be for wages, and how much for benefits. While the proportional allocation for the first few six month periods is normally known at the time the agreements are negotiated and is included in the printed contracts, the District Council will issue updated wage and benefit schedules at a later date, which specify the wage and benefit rates for the remaining six month periods.

7. Independent employers who are not members of any association may become signatory to a collective bargaining agreement with the District Council by signing what is known as an "independent agreement."

8. The independent agreements are based on the association agreements, with only very minor differences. For instance, the "Independent Building Construction Agreement" is based on the District Council's agreements with the Association of Wall, Ceiling, and Carpentry Industries of New York and the Building Contractors Association. The applicable wage and fringe benefit fund contribution rates in these two agreements are identical

3

9. A true and correct copy of the District Council's agreement with the Association of Wall, Ceiling, and Carpentry Industries of New York for 2001 – 2006 is annexed hereto as Exhibit 24.

10. There is no difference whatsoever between an independent agreement and the association agreement(s) that it is based on with regard to wage and fringe benefit fund contribution rates. For instance, the wage and fringe benefit fund contribution rates required by the District Council's agreement with the Association of Wall, Ceiling, and Carpentry Industries of New York are exactly the same as the rates required by the Independent Building Construction Agreement. Indeed, the District Council only publishes one wage and benefit schedule for both agreements. That is, the same document indicates the proportional allocation between wages and benefits throughout the life of the five-year contracts for the Independent Building Construction Agreement and for the agreement with the Association of Wall, Ceiling, and Carpentry Industries of New York (see Exhibit 22).

11. An independent employer who desires to avail itself of the benefits of a union contract will sign the independent agreement that is based on the association agreement negotiated by the multi-employer association whose members perform similar work to the work performed by the independent employer. For instance, an independent employer who does wall and ceiling construction (e.g., sheetrock framing) will sign the Independent Building Construction Agreement, which is based on the agreement negotiated by the Association of Wall, Ceiling, and Carpentry Industries of New York.

4

12. An independent employer does not become a member of an association when it signs an independent agreement. However, the independent agreements nonetheless require the independent employer to contribute to a "promotional fund" which supports the activities of the association whose members perform similar work to that performed by the independent employer. For instance, an independent employer who performs wall and ceiling construction, such as sheetrock framing, must contribute to the promotional fund for the Association of Wall, Ceiling, and Carpentry Industries of New York, which is named the "Drywall Industry Promotional Fund of New York."

13. Annexed hereto as Exhibit 23 is a true and correct copy of an agreement between KW Construction Inc. and the District Council which requires KW Construction Inc. to make contributions to the Drywall Industry Promotional Fund of New York. This agreement was signed by John Whyte. This document, and a digital image of this document, is maintained in the ordinary course of business by the Benefit Funds Contract Administration Office.

14. Annexed hereto as Exhibit 22 is a true and correct copy of the schedule of wages and benefits for the building construction Carpenters for 2001 to 2006. This schedule governs the allocation of wages and fringe benefit fund contributions under (1) Independent Building Construction Agreement for 2001 – 2006, (2) the agreement with the Association of Wall, Ceiling, and Carpentry Industries of New York for 2001 – 2006, and (3) the Agreement with the Building Contractors Association for 2001 – 2006. Copies of these documents (and, in some

5

cases, digital images of these documents) are maintained in the ordinary course of business by the Benefit Funds Contract Administration Office.

15. The annexed wage and benefit schedule (Exhibit 22) shows the required wage and contribution rates for the various fringe benefit funds under the three agreements referenced in paragraph 14, above. As illustrated by the wage and benefit schedule, the contribution rate for each of the fringe benefit funds increased five times throughout the life of the five-year agreements that were effective from 2001 to 2006. The pension fund contribution rate was $5.41 per hour for the first year of the 2001-2006 agreements. It then increased to $5.91 for the second year, $6.36 for the third year, $6.81 per hour for the fourth year, and $7.81 for the fifth and final year of the agreements.

16. The Employer Contributions Inquiry (Exhibit 19), shows that KW Construction Inc. complied with each of these increases, and remitted the proper pension fund contributions in each time period from July 2001 through February 2005.

Dated:  New York, New York
        April 30, 2008

                                                    /s/ Phil Giudice
                                                    PHIL GIUDICE