UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
THE NEW YORK DISTRICT COUNCIL OF CARPENTERS
PENSION FUND ET AL.

                                Plaintiffs,

   -against-

                                             07-CV-08008 (RJS)

KW CONSTRUCTION, INC., as Successor to KW
GENERAL CONTRACTOR, INC. and JOHN WHYTE d/b/a
KW CONSTRUCTION, INC., and JOHN WHYTE, individually,

                                Defendants.
-------------------------------------------------------------------------X


## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO THE PLAINTIFFS' MOTION FOR AN ORDER OF ATTACHMENT


                                                    TRIVELLA, FORTE & SMITH, LLP
                                                    By: Christopher A. Smith (CS 9014)
                                                    Attorneys for the Defendants
                                                    1311 Mamaroneck Ave. Suite 170
                                                    White Plains, New York 10605
                                                    Telephone: (914) 949-9075
                                                    Facsimile: (914) 949-4752


## *Table of Contents*

Table of Contents .................................................................................................. 1
I. The Plaintiffs Failed to Meet the Requirements of CPLR 6201 ...................................... 2
II. It is not Likely That the Plaintiffs Will Succeed on the Merits ........................................ 6
    A. The Plaintiffs Have not met the Standard for Imposing Personal Liability for Employee Benefit Fund Contributions -New York Law Controls ............................. 6
    B. No Grounds Exist for "Piercing the Corporate Veil" ........................................... 10
III. The Plaintiffs Have Failed to Establish Specific Instances of Fraudulent Activity or Conduct Impeding the Funds' Ability to Collect on a Judgment ...................................... 13
IV. This Court Lacks Subject Matter Jurisdiction With Respect to Periods after 2001 and John Whyte Since There Is No Collective Bargaining Agreement for That Time Period or with John Whyte Individually ............................................................................... 15
    A. The National Labor Relations Board Has Exclusive Jurisdiction Over Post-Contract-Expiration Fund Contribution Claims ............................................................. 17
The Plaintiffs Have Failed to Join Necessary Parties to this Action ............................... 17
Any Writ Issued Should be Conditioned on the Plaintiffs Posting a Sufficient Undertaking/Security ................................................................................................ 17
Conclusion ............................................................................................................ 18

## *Table of Authorities*

### Cases

American Protein Corp. v. AB Volvo, 844 F.2d 56, 60 [2d Cir.1988].............................. 11
Bartle v. Home Owners Coop., 309 N.Y. 103, 106, 127 N.E.2d 832........................ 10, 11
Berkey v. Third Avenue R. Co., (1926) 244 N.Y. 84, 94, 155 N.E. 58, 61, 50 A.L.R. 599 9
Bevona v. Galbreath-Ruffin Corporation, 690 F. Supp. 234, 239 (S.D.N.Y. 1988) ......... 17
Billy v. Consolidated Mach. Tool Corp., 51 NY2d 152, 163;
Port Chester Elec. Constr. Corp. v. Atlas, 40 NY2d 652, 656..................................... 9, 10
Bottlers Seal Co. v. Rainey, 243 NY 333 ......................................................................... 9
Cement & Concrete Workers Dist. Council Welfare Fund v. Lollo, 35 F.3d 29, 35 (2d
    Cir.1994).................................................................................................................. 7, 8
Computer Strategies, Inc. v. Commodore Business Machines, Inc., 105 A.D.2d 167, 173,
    483 N.Y.S.2d 716, 721 (2d Dep't 1984)....................................................................... 5
Kingston Dry Dock Co. v. Lake Champlain Transportation Co. (C.C.A.1929) 31 F.(2d)
    265, 267....................................................................................................................... 9
Laborers Health and Welfare Trust Fund v. Advanced Lightweight Concrete Co., 484
    U.S. 539, 543-44 (1988). .......................................................................................... 17
Laborers' Pension Fund v. Joe Cachey Construction Co., 947 F.Supp. 365 (U.S. Dist Ct.
    N.D. Ill. 1996)............................................................................................................ 16
Lowendahl v. Baltimore & Ohio R.R. Co., 247 App.Div. 144, 157, 287 N.Y.S. 62, affd
    272 N.Y. 360, 6 N.E.2d 56 ............................................................................... 9, 11, 12
Mason Tenders District Council Welfare Fund v. Thomasen Construction Company, Inc.,
    164 F.Supp.2d 379 (S.D.N.Y. 2001).................................................................... 6, 7
Matter of Guptill Holding Corp. v. State of New York, 33 A.D.2d 362, 364-365, 307
    N.Y.S.2d 970, affd 31 N.Y.2d 897, 340 N.Y.S.2d 638, 292 N.E.2d 782 ............... 10, 12
Mencher v. Weiss, 306 N.Y. 1, 4, 114 N.E.2d 177 (1953).................................................. 6
Morris v. New York State Department of Taxation and Finance, 82 N.Y.2d 135, 623
    N.E.2d 1157, 603 N.Y.S.2d 807 (1993)................................................................ 11, 12
Passalacqua Bldrs. v. Resnick Developers S., 933 F.2d 131, 138 [2d Cir.1991] ............. 12
Port Chester Elec. Constr. Corp. v. Atlas, 40 N.Y.2d 652, 389 N.Y.S.2d 327, 357 N.E.2d
    983................................................................................................................................ 10
Rapid Tr. Subway Constr. Co. v. City of New York, 259 NY 472, 487-488 ................ 9, 10
Salzman Sign Co. v. Beck, 10 N.Y.2d 63, 67, 217 N.Y.S.2d 55, 176 N.E.2d 74 (1961)... 6
Sasso v. Cervoni, 985 F.2d 49, 50-51(2d Cir. 1993) ....................................................... 8
See Indiana State Council of Roofers Health and Welfare Fund v. Adams Roofing Co.,
    753 F.2d 561, 563-64 (7th Cir.1985) ......................................................................... 17
Senior v. New York City R. Co., 111 App.Div. 39, 97 N.Y.S. 645, aff'd 187 N.Y. 559, 80
    N.E. 1120 .................................................................................................................... 9
Stone v. Cleveland, C., C. & St. L. R. Co., 202 N.Y. 352, 95 N.E. 816, 35 L.R.A. (N.S.)
    770................................................................................................................................ 9
United States v. Reading Co., (1920) 253 U.S. 26, 40 S.Ct. 425, 64 L.Ed. 760 ................ 9
We're Associates Co. v. Cohen, Stracher & Bloom, P.C., 103 A.D.2d 130, 478 N.Y.S.2d
    670 (2d Dep't 1984).................................................................................................... 9

### Statutes

29 U.S.C § 186.................................................................................................................. 15

29 U.S.C. §§ 185 .................................................................................................................. 15

**Treatises**
14 N.Y. Jur. 2d, Business Relationships, §728, pp 546-547 ................................................ 9
18 Am.Jur.2d, Corporations, § 51 ...................................................................................... 12
Presser, Piercing the Corporate Veil § 1.01 ....................................................................... 10

## *I. The Plaintiffs Failed to Meet the Requirements of CPLR 6201*

For the reasons stated below the defendants respectfully submit the plaintiffs have failed to establish the requisites necessary for obtaining an order of attachment under New York Law. FRCP 64 authorizes this District Court to issue an order of attachment "under the circumstances and in the manner provided by the law of the State in which the district court is held". CPLR 6201[1] governs the criteria for a pre-judgment order of attachment in this District. The only provision the plaintiffs move under is CPLR 6201(3). The plaintiffs, however, have failed to meet their burden of establishing facts evidencing an attempt by the defendants to immediately dispose of property in an effort to defraud the plaintiffs' employee benefit funds. Case law holds that to meet the requirements of CPLR 6201(3), the plaintiffs must show more than a mere "suspicion" of

---

[1] CPLR 6201 reads, in pertinent part:
Grounds for attachment. An order of attachment may be granted in any action, except a matrimonial action, where the plaintiff has demanded and would be entitled, in whole or in part, or in the alternative, to a money judgment against one or more defendants, when:
  1. the defendant is a nondomiciliary residing without the state, or is a foreign corporation not qualified to do business in the state; or
  2. the defendant resides or is domiciled in the state and cannot be personally served despite diligent efforts to do so; or
  3. the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts; or
  4. the action is brought by the victim or the representative of the victim of a crime, as defined in subdivision six of section six hundred twenty-one of the executive law, against the person or the legal representative or assignee of the person convicted of committing such crime and seeks to recover damages sustained as a result of such crime pursuant to section six hundred thirty-two-a of the executive law; or
  5. the cause of action is based on a judgment, decree or order of a court of the United States or of any other court which is entitled to full faith and credit in this state, or on a judgment which qualifies for recognition under the provisions of article 53.

fraudulent intent. "It must appear that such fraudulent intent really existed in the defendant's mind. A mere showing of removal or assignment or other disposition of property is not by itself grounds for attachment." <u>Computer Strategies, Inc. v. Commodore Business Machines, Inc.</u>, 105 A.D.2d 167, 173, 483 N.Y.S.2d 716, 721 (2d Dep't 1984)(order of attachment properly vacated). A plaintiff must also show "probable success on the merits … and that the amount demanded from the defendant exceeds all counterclaims known to the plaintiff." <u>Id.</u> at 173. <u>See</u> <u>also</u> CPLR 6212(a).

      The plaintiffs submit a dearth of evidence in support of their motion. Exhibit 1 is an <u>unsigned</u> document with no employer listed anywhere in the document that the plaintiffs claim is a collective bargaining agreement binding the defendants to make fund contributions for the period July 1, 2001 through June 30, 2006. As the case law below demonstrates without a written agreement obligating the defendants to make contributions for the period at issue, the plaintiffs are not likely to succeed in proving contributions are owed for this period. The plaintiffs also submit an affidavit from a forensic auditor alleging a delinquency of over one million dollars. This auditor fails to properly explain how he established the hours he picked up corresponded to work covered by a collective bargaining agreement or agreement requiring fund contributions. The sole "evidence" the plaintiffs proffer to demonstrate the defendants are engaging in a scheme to immediately dispose of property in an effort to defraud the plaintiffs' employee benefit funds is the hearsay document of Bienvenido Rivera, alleging he left employees off a shop report supposedly at the request of Mr. Whyte some time in 2003. Mr. Whyte denies this claim. This allegation of fraud does nothing to establish a present scheme to defraud by any of the defendants. The plaintiffs also submit various and

sundry checks alleging a payment of personal expenses through corporate accounts in 2004 and 2005 or transfers of property in 2004. None of these documents supports the theory of a present scheme to defraud these plaintiffs or otherwise dissipate KW Construction assets. For these reasons the plaintiffs have not met the requirements of CPLR 6201 and the Court should, respectfully, deny the motion.

## II. It is not Likely That the Plaintiffs Will Succeed on the Merits

### A. The Plaintiffs Have not met the Standard for Imposing Personal Liability for Employee Benefit Fund Contributions -New York Law Controls

The individual defendant John Whyte requests the Court deny the plaintiffs' application for an order of attachment of his property since the plaintiffs will not be able to prove he is individually liable for the fund delinquency. In <u>Mason Tenders District Council Welfare Fund v. Thomasen Construction Company, Inc.</u>, 164 F.Supp.2d 379 (S.D.N.Y. 2001) (Ellis, J.) the Court held that a corporate owner is not liable for a corporation's failure to make contributions to multi-employer labor-management trust funds that were established and maintained pursuant to various collective bargaining agreements. The Court further held that New York law governs the determination of personal liability, and that (emphasis added):

> Pursuant to New York law, an agent signing an agreement on his principal's behalf, will not be found personally liable under the terms of the agreement " 'unless there is <u>clear and explicit evidence of the agent's intention to substitute or superadd his personal liability for, or to, that of his principal</u>.' " *Lerner,* 938 F.2d at 5 (*citing Mencher v. Weiss,* 306 N.Y. 1, 4, 114 N.E.2d 177 (1953)). The reason for this policy is that " '[i]n modern times most commercial business is done between corporations,' not individual stockholders or officers of the corporation, who in many instances, own little or no stock in the corporation." *Id.* (quoting *Salzman Sign Co. v. Beck,* 10 N.Y.2d 63, 67, 217 N.Y.S.2d 55, 176 N.E.2d 74 (1961)). Thus, personal liability is found "<u>only in rare cases</u>." *Id.*

> The factors considered in determining whether personal liability exists include the length of the contract, the placement of the liability clause relative to the signature line, the appearance of the signatory's name in the agreement itself, the nature of the negotiations that surrounded the formation of the agreement, and lastly, the signatory's role in the company.*Cement & Concrete Workers Dist. Council Welfare Fund v. Lollo,* 35 F.3d 29, 35 (2d Cir.1994).

Mason Tenders, 164 F.Supp.2d at 381.  Here personal liability should not lie since: 1. The plaintiffs submit no collective bargaining agreement signed after May 16, 2001 and Mr. Whyte declares he does not recall signing any collective bargaining agreement thereafter ; 2. There is no clause whatsoever, either near the alleged signature or otherwise, in the Purported Collective Bargaining Agreement[2] seeking to fix personal liability on the individual defendant, and no evidence whatsoever that any such language was negotiated or that the Union sought to negotiate such language; 3. The individual defendant's name was not included in the text of the Purported Collective Bargaining Agreement (indeed the agreement refers to only to the word "employer" does not define "employer" and has a blank space where the name of the employer bound to the agreement should be) 4. The appearance of the signatories' name, with the word "President" on the signature line and which line reads "officer's signature and title" clearly indicating a signature on behalf of the corporation only; and 5. There is no evidence that any collective bargaining negotiations occurred at any time between the parties, and no evidence that the defendants were ever given a copy of the Purported Collective Bargaining Agreement.

Even assuming, arguendo, there was  an agreement requiring the corporate defendant to make fund contributions, the Complaint fails to allege, and the moving papers fail to support, "special circumstances" which the Second Circuit requires for

---

[2] The Purported Collective Bargaining Agreement is at Plaintiffs' papers at Exhibit 1.

holding individual corporate officers liable. In <u>Sasso v. Cervoni</u>, 985 F.2.d 49, 50-51(2d Cir. 1993) the Second Circuit disallowed liability against individual defendants absent circumstances that justify "piercing the corporate veil".

Moreover, the plaintiff's allegations do not plead with particularity the requisite elements for alleging fraud under ERISA, to wit: (i) a material false representation or omission of an existing fact, (ii) the defendant's knowledge of the falsity, (iii) the defendant's intent to defraud, (iv) the plaintiff's reasonable reliance upon the misrepresentation or omission, and (v) consequent damage to the plaintiff. <u>Lollo</u>, 148 F.3d 194, 196 (2d Cir. 1998).

The plaintiffs, alleging a claim against the individual defendant, now seek in this action what the Union was never able to obtain through negotiation with the defendants—the right to hold the individual defendant personally liable, jointly and severally, for a debt that arises, if at all, from an alleged contract exclusively between the corporate defendant and the Union. New York law expressly permits a party to establish a corporation for the sole purpose of limiting the personal liability of its shareholders. In fact, the limitation of shareholder liability and the tax advantages afforded a business operating in the corporate form are the core reasons that businessmen maintain the corporate form. The Appellate Division, First Department provided a good summary of the principles regarding a stockholder's immunity from the debts and obligations of the corporation:

> Stockholder's immunity from corporate obligation is fundamental to the very concept of the corporation as a separate legal entity. Around it the entire body of corporation law is built. It is accepted in theory and practice and ingrained in our legal and economic systems. Courts will not lightly disregard the corporate entity. The burden is on the complainant to establish by a preponderance of evidence all

the elements necessary.

> Control through mere ownership of a majority or of even all the capital stock and the use of the power incident thereto to elect officers and directors will not in and of itself predicate liability. *Senior v. New York City R. Co.*, 111 App.Div. 39, 97 N.Y.S. 645, <u>aff'd</u> 187 N.Y. 559, 80 N.E. 1120; *Stone v. Cleveland, C., C. & St. L. R. Co.*, 202 N.Y. 352, 95 N.E. 816, 35 L.R.A. (N.S.) 770;*Kingston Dry Dock Co. v. Lake Champlain Transportation Co.* (C.C.A.1929) 31 F.(2d) 265, 267. Liability must depend upon a domination and control so complete that the corporation may be said to have no will, mind, or existence of its own, and to be operated as a mere department of the business of the stockholder. *Berkey v. Third Avenue R. Co.* (1926) 244 N.Y. 84, 94, 155 N.E. 58, 61, 50 A.L.R. 599;*United States v. Reading Co.* (1920) 253 U.S. 26, 40 S.Ct. 425, 64 L.Ed. 760, *Rapid Transit Subway Construction Co. v. City of New York* (1932) 259 N.Y. 472, 182 N.E. 145

<u>Lowendahl v. Baltimore & O.R. Co.</u>, 287 N.Y.S. 62, 73 (1st Dept. 1936). The Second Department elaborated on this doctrine of immunity:

> It is well established that in the absence of some constitutional, statutory or charter provision, the shareholders of a corporation are not liable for its contractual obligations and that parties having business dealings with a corporation must look to the corporation itself and not the shareholders for payment of their claims (see *Billy v. Consolidated Mach. Tool Corp.*, 51 NY2d 152, 163; *Port Chester Elec. Constr. Corp. v. Atlas*, 40 NY2d 652, 656; *Bottlers Seal Co. v. Rainey*, 243 NY 333; 14 N.Y. Jur. 2d, Business Relationships, §728, pp 546-547). Indeed, this insulation from individual liability for corporate obligations is one of the fundamental purposes of operating through the corporate form (*Billy v. Consolidated Mach. Tool Corp.*, supra.; *Rapid Tr. Subway Constr. Co. v. City of New York*, 259 NY 472, 487-488). Where the Legislature has intended to depart from this general rule of limited liability and impose the obligations of the corporation upon the individual shareholder, it has made explicit provisions for such obligations…

<u>We're Associates Co. v. Cohen, Stracher & Bloom, P.C.</u>, 103 A.D.2d 130, 478 N.Y.S.2d 670 (2d Dep't 1984)(individual shareholders not liable for corporate lease obligations). The burden is on the plaintiffs to establish that an exception to the general rule applies. Since the plaintiffs have not initially met that burden in their papers, the individual defendant respectfully requests denial of the motion.

## B. No Grounds Exist for "Piercing the Corporate Veil"

Since no statute or contractual obligation exists providing for shareholder liability, the plaintiff, to prevail, must demonstrate that the facts herein fall into one of the common law exceptions to the traditional rule of shareholders insulation from personal liability for debts of the corporation. One such exception to the general rule of limited liability is the equitable concept known as "piercing the corporate veil". New York Courts developed this exception to remedy the situation where injury results due to the fraudulent acts of a corporate shareholder or representative. The Court of Appeals expounded on the requirements for invoking this exception:

> The concept of piercing the corporate veil is a limitation on the accepted principles that a corporation exists independently of its owners, as a separate legal entity, that the owners are normally not liable for the debts of the corporation, and that it is perfectly legal to incorporate for the express purpose of limiting the liability of the corporate owners (*see, Bartle v. Home Owners Coop.,* 309 N.Y. 103, 106, 127 N.E.2d 832; *Rapid Tr. Subway Constr. Co. v. City of New York,* 259 N.Y. 472, 487-488, 182 N.E. 145; Presser, Piercing the Corporate Veil § 1.01, at 1-4--1-5). The doctrine of piercing the corporate veil is typically employed by a third party seeking to go behind the corporate existence in order to circumvent the limited liability of the owners and to hold them liable for some underlying corporate obligation (*see, e.g., Billy v. Consolidated Mach. Tool Corp.,* 51 N.Y.2d 152, 432 N.Y.S.2d 879, 412 N.E.2d 934; *Port Chester Elec. Constr. Corp. v. Atlas,* 40 N.Y.2d 652, 389 N.Y.S.2d 327, 357 N.E.2d 983; *Walkovszky v. Carlton, supra; Bartle v. Home Owners Coop., supra* ) ... an attempt of a third party to pierce the corporate veil does not constitute a cause of action independent of that against the corporation; rather it is an assertion of facts and circumstances which will persuade the court to impose the corporate obligation on its owners.
>
> …
>
> Generally, ... piercing the corporate veil requires a showing that: (1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury (*see, Matter of Guptill Holding Corp. v. State of New York,* 33 A.D.2d 362, 364-365, 307 N.Y.S.2d 970, *affd* 31 N.Y.2d 897, 340 N.Y.S.2d 638, 292 N.E.2d 782; *Lowendahl v. Baltimore & Ohio R.R. Co.,* 247 App.Div. 144, 157, 287 N.Y.S. 62, *affd* 272 N.Y. 360, 6

> N.E.2d 56; *American Protein Corp. v. AB Volvo*, 844 F.2d 56, 60 [2d Cir.1988] [analyzing New York law and citing *Lowendahl (supra)* ]; *International Aircraft Trading Co. v. Manufacturers Trust Co.*, 297 N.Y. 285, 292, 79 N.E.2d 249; *see generally,* Presser, Piercing the Corporate Veil § 2.33[3], at 2-304--2-313).

<u>Morris v. New York State Department of Taxation and Finance</u>, 82 N.Y.2d 135, 623 N.E.2d 1157, 603 N.Y.S.2d 807 (1993). In another case the Court of Appeals opined:

> The law permits the incorporation of a business for the purpose of escaping personal liability, and, where the purpose of defendant, a co- operative corporation, in placing its operation of constructing low-cost homes into a separate corporation was within public policy and there was neither fraud, misrepresentation nor illegality, the corporate veil will not be pierced.

<u>Bartle v. Home Owners Coop.</u>, 309 N.Y. 103, 104,106, 127 N.E.2d 832 (1955).

John Whyte did not exercise complete domination over the corporate defendants. Indeed, there is no evidence to demonstrate the defendants did not regularly and consistently follow corporate formalities and otherwise recognize and adhere to the requirements of maintaining a KW Construction under New York law. The plaintiffs fail in their burden of demonstrating the corporations were a mere reflection of their shareholders, and the officers of KW Construction and KW Construction of Tri State maintained the corporations' separate and distinct identities. Therefore, the plaintiffs fail to satisfy the first prong of the test set forth in the *Morris* case *supra*.

Even assuming, <u>arguendo,</u> the Court were to find that the individual defendant exercised complete domination over the defendant corporations, which he did not, there are still no grounds to piece the corporate veil and hold the individual defendant liable for any corporate debt of the corporate defendants. The Court of Appeals stated that complete domination of the corporation, standing alone, is not enough; some showing of a wrongful or unjust act toward plaintiff is required. *Morris*, 82 N.Y.S.2d at 141, *citing*

11

*Guptill, supra,* 33 A.D.2d at 365; *Lowendahl, supra,* 247 A.D. at 157, 287 N.Y.S. 62; *Passalacqua Bldrs. v. Resnick Developers S.,* 933 F.2d 131, 138 [2d Cir.1991] [applying New York law]; *see generally,* 18 Am.Jur.2d, Corporations, § 51. The party seeking to pierce the corporate veil must establish that the owners, through their domination, abused the privilege of doing business in the corporate form to perpetrate a wrong or injustice against that party such that a court in equity will intervene. *Id.*

    The plaintiffs fall far short of meeting their burden on this second prong of the *Morris* test, to wit, that the individual defendant, through his domination, misused the corporate form for his personal ends so as to commit a wrong or injustice on the plaintiffs. *Morris, supra,* 82 N.Y.2d at 141, *Guptill, supra,* 33 A.D.2d at 364-365, 307 N.Y.S.2d 970; *Lowendahl, supra,* 247 A.D. at 157, 287 N.Y.S. 62. There is no indication of fraud on the part of individual defendant or the corporation with respect to defrauding the employee benefit funds. There is no showing of an illicit scheme alleged by the plaintiffs to utilize the corporation to commit a fraud on the plaintiffs. There is no contention that there was anything improper in the formation of either corporate defendant for the stated purpose of performing construction contracts. KW Construction, upon information and belief, and has carried on its stated business of construction through 2003. The plaintiffs fail in their burden of demonstrating that either corporation operated solely as a sham to do the personal business of the individual defendant. Indeed there is no affidavit submitted in the plaintiffs' papers from any person with personal knowledge of the corporate defendants, or with personal knowledge that the hours picked up in the Polvere Affidavit were hours of work covered by the collective bargaining agreements in this action. Nor is there any basis to believe that either corporation was

created or existed for the purpose of avoiding payment to the Funds. Indeed, the facts are otherwise. There is nothing to demonstrate that John Whyte utilized the corporate form to injure the plaintiffs or the Funds.

The 17 Highland Avenue, Yonkers, New York property is not subject to attachment since it is owned by Mr. Whyte's partner Michael Kennedy and Mr. Kennedy's wife. Even disregarding the transaction where the property was transferred in 2004 to the Kennedys, the property would not be subject to attachment since, upon information and belief, it was property of a partnership between Michael Kennedy and John Whyte. See e.g. N.Y. Partnership Law Section 51(2)(c)[3].

## III. The Plaintiffs Have Failed to Establish Specific Instances of Fraudulent Activity or Conduct Impeding the Funds' Ability to Collect on a Judgment

The Court, respectfully, should deny the instant application for the same reason that the Court previously (by Order dated March 11, 2008) denied the plaintiffs' *ex parte* application for an order of attachment. The Court, citing Brastex Corp. v. Allen Int'l, Inc., 702 F.2d 326, 331-32 (2d Cir. 1993) denied the plaintiffs' *ex parte* application without prejudice and advised the plaintiffs that to obtain the attachment order they must "demonstrate that the defendant is acting with intent to defraud …the moving papers must contain evidentiary facts-as opposed to conclusions-proving the fraud." The plaintiffs have failed to satisfy that evidentiary burden.

---

[3] Partnership Law 51(2)(c) reads, in pertinent part:

A partner's right to specific partnership property is not subject to attachment or execution, except on a claim against the partnership.

13

In support of the application the plaintiffs submit the Affidavit of forensic accountant Gregory Polvere. This author has worked on fund delinquency issues with Mr. Polvere previously. While I certainly believe he is a competent individual, his affidavit does nothing to establish an intent to defraud by John Whyte. The affidavit is not based on his personal knowledge. It is based on an inspection of hearsay corporate documents and records. Mr. Polvere does not state (nor would he be expected to know) that he has personal knowledge that the individuals listed in his audit performed work covered by a collective bargaining agreement, participation agreement or other document requiring a contribution to the Funds. Indeed the plaintiffs characterize Mr. Polvere's findings as a "preliminary assessment which may be modified"[4]. Unfortunately the plaintiffs' papers contain no specific detailing of how Mr. Polvere arrived at his $1,114,185.18 delinquency finding. The audit is not supported by corresponding shop steward reports or other evidence demonstrating that the payroll represented carpenter work or work at sites covered by the relevant collective bargaining agreements. As the Declaration of John Whyte states, much of the work cited to by Mr. Polvere is work performed in Westchester County or hours by painters or others not covered by the District Council agreement. Mr. Polvere does not explain how he determined that the hours listed in his audit were performed by carpenters. Mr. Polvere appears to have picked up every hour listed in the payroll as carpenter hours. Additionally Mr. Polvere indicates his audit covers the period 2000 through 2005. He does not provide a detailing of his audit and the plaintiffs submit no document obligating the defendants to contribute to the Funds for the

---

[4] See Plaintiffs' Memorandum of Law, page 2 fn. 1.

14

period July 1, 2001 through June 30, 2006[5]. If the Court determines there is no written obligation to contribute during this time period then 29 U.S.C § 186 prohibits the fund contribution. It appears the Funds conceded during a default arbitration that the collective bargaining agreement expired at the latest on June 30, 2003[6]. It also appears that Mr. Polvere included in his audit time periods after that date.

Nor do the plaintiffs' papers provide evidence of specific or general instances of fraudulent activity by John Whyte designed to thwart KW Construction's creditors. For all of these reasons the plaintiffs' moving papers fail to establish either an intent to defraud or an imminent loss of property from the jurisdiction.

## IV. This Court Lacks Subject Matter Jurisdiction With Respect to Periods after 2001 and John Whyte Since There Is No Collective Bargaining Agreement for That Time Period or with John Whyte Individually

The plaintiffs rely on 29 U.S.C. §§1132, and 29 U.S.C. §§ 185 for subject matter jurisdiction[7]. In order to invoke these provisions there must exist a collective bargaining agreement or other document contractually obligating the defendants to make contributions for the period at issue. Here there is no such document for KW Construction of Tri State Inc. Corporation or John Whyte individually, and no document for KW Construction for the period after July 1, 2001(since the purported agreement at Plaintiffs' Exhibit 1 is unsigned). Therefore, the Complaint fails to allege sufficient grounds for the Court to exercise subject matter jurisdiction over KW Construction of Tri

---

[5] Plaintiffs' papers at Exhibit 1 contain an <u>unsigned collective bargaining agreement</u> for the period July 1, 2001 through June 30, 2006.
[6] See 12/11/04 default arbitration award at Plaintiffs' papers, Exhibit 4.
[7] Complaint, ¶ 2.

15

State Inc. Corporation and John Whyte, and over KW Construction for the period after July 2001 and the Complaint does not satisfy the pleading requirements of FRCP 8.

In Laborers' Pension Fund v. Joe Cachey Construction Co., 947 F.Supp. 365 (U.S. Dist Ct. N.D. Ill. 1996) the Court held (brackets added):

> [The][f]unds propose that this court has independent subject matter jurisdiction over this claim based upon §§ 502 and 515 of ERISA. This argument fails because of the inherent flaw that Future Masonry is not a party to the collective bargaining agreement between Union and Joe Cachey. Sections 502 and 515 jurisdiction is predicated upon there being an agreement by the employer to contribute to employee pension plans…[t]here is no independent jurisdictional basis under ERISA to enforce pension obligations against a nonsignatory employer. Therefore, Funds may not support a claim that Joe Cachey and Future Masonry are liable for contributions for Future Masonry's employees based upon §§ 502 and 515 of ERISA. Accordingly, count one of Funds' second amended Complaint as to Joe Cachey and Future Masonry for Future Masonry employee contributions must be dismissed.

In the instant action, since there is no collective bargaining or other agreement to contribute to the Funds with John Whyte and KW Construction of Tri State Inc., there is no jurisdiction over a claim for contributions under ERISA, and therefore the motion should be denied[8].

Likewise, there is no subject matter jurisdiction pursuant to 29 U.S.C. § 1145 absent a current agreement between the parties. 29 U.S.C. § 1145 reads (emphasis added):

> Every employer who is obligated to make contributions to a multiemployer plan <u>under the terms of the plan or the terms of a collectively bargained agreement</u> shall, <u>to the extent not inconsistent with law</u>, make such contributions in accordance with the terms and conditions of such plan or such agreement.

As the District Court in Bevona v. Galbreath-Ruffin Corporation, 690 F. Supp. 234,

---

[8] See also Adcox v. Teledyne, 21 F.3d 1381, 1388 (6th Cir. 1994)(district court lacked subject matter jurisdiction over claims based on employer's failure to pay benefits provided for in superceded collective bargaining agreement. The Court found the agreement must be "in force" for the district court to have jurisdiction).

16

239 (S.D.N.Y. 1988) stated:

> Again, since there is no agreement for the fund contribution period at issue Section 1145 does not confer subject matter jurisdiction on this Court. Nor does ERISA impose upon Galbreath an independent duty to make such contributions. [FN7] Indeed, ERISA's requirement that an employer contribute to a multiemployer plan is contingent upon an obligation to contribute arising "under the terms of the plan or under the terms of a collectively bargained agreement." 29 U.S.C. § 1145.  Thus, ERISA does not obligate an employer to make contributions for employees not covered in the collective bargaining agreement or in any other agreement.  See Indiana State Council of Roofers Health and Welfare Fund v. Adams Roofing Co., 753 F.2d 561, 563-64 (7th Cir.1985).

The dispute over the duration of the collective bargaining agreement justifies the Court denying the order of attachment.

### A. The National Labor Relations Board Has Exclusive Jurisdiction Over Post-Contract-Expiration Fund Contribution Claims

The National Labor Relations Board has exclusive jurisdiction over any dispute over the collection of unpaid contributions accruing after expiration of the agreement to contribute.  Laborers Health and Welfare Trust Fund v. Advanced Lightweight Concrete Co., 484 U.S. 539, 543-44 (1988).  Since it is not clear what time period the Court has jurisdiction over the Court should deny the motion .

## The Plaintiffs Have Failed to Join Necessary Parties to this Action

The Court should deny the motion since the plaintiffs failed to join the owners of the property and the mortgagees, who are necessary parties to this action.

## Any Writ Issued Should be Conditioned on the Plaintiffs Posting a Sufficient Undertaking/Security

CPLR 6212(b) mandates the posting of an undertaking at least in the amount of $500.  The defendants submit that, in the event an attachment issues, the Court condition the attachment on the posting of an undertaking of One Million Dollars. One Million

Dollars is a reasonable estimate of the defendants' damages if the plaintiffs restrain the property, since as Mr. Whyte indicated, if he is unable to sell the Goshen property it will in all likelihood result in foreclosure and acceleration of the mortgage on that property. Additional damages are likely to include: 1. Damages to the partnership that owns the Yonkers property; 2. Damages to the owners; 3. Damage to the corporations in the restraint of their property located in the various corporate bank accounts.

## Conclusion

For the foregoing reasons, the defendants request the Court deny the plaintiffs' motion, together with awarding the defendants the costs, disbursements and attorneys' fees associated with this motion and action and such other and further relief as to the Court may seem just and proper. If the Court in its discretion grants the motion the defendants request any order be conditioned on the posting by the plaintiffs of an undertaking in the amount of One Million Dollars.

White Plains, New York
March 25, 2008

Respectfully submitted,

TRIVELLA, FORTE & SMITH, LLP
Attorneys for the Defendants
by: CHRISTOPHER A. SMITH (CS 9014)
1311 Mamaroneck Avenue, Suite 170
White Plains, New York 10605
(914) 949-9075/949-4752(facsimile)