UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
THE NEW YORK DISTRICT COUNCIL OF CARPENTERS PENSION FUND, et al.,

Plaintiffs,

-against-

**07-CV-08008 (RJS)**
**08-CV-00387**

KW CONSTRUCTION, INC., as Successor to KW GENERAL CONTRACTOR, INC. and JOHN WHYTE d/b/a KW CONSTRUCTION, INC., and JOHN WHYTE, individually,

Defendants.
-------------------------------------------------------------------------X

**DEFENDANTS' SUR-REPLY MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR AN ORDER OF ATTACHMENT**

TRIVELLA, FORTE & SMITH, LLP
By: Christopher A. Smith (CS 9014)
Attorneys for the Defendants
1311 Mamaroneck Ave. Suite 170
White Plains, New York 10605
Telephone: (914) 949-9075
Facsimile: (914) 949-4752

## Table of Contents


Table of Contents ........ 2
Table of Authorities ........ 3
Legal Argument ........ 4
I. One Million Dollars is an Appropriate Undertaking ........ 4
II. Any Attachment Order Should Specifically Exclude the 17 Highland, Goshen, and Chappaqua Properties ........ 6
III. The Plaintiffs' Failure to Prove a Collective Bargaining Agreement Existed After June 2001 Justifies Denial of the Motion ........ 7
IV. CPLR §6201(3) Requires a Present Intent to Remove or Dispose of Defendant's Assets to Frustrate the Defendant's Creditor's Rights ........ 11
*Conclusion* ........ 14

# Table of Authorities

## Cases

A.C.A. American Masters, Inc. v. Wertz, 45 A.D.2d 838, 839, 358 N.Y.S.2d 445, 445(1974) ........ 11
District Council v. KW Construction, 05 CV 4021 (JGK)AJP) ........ 9
Eaton Factors Co., Inc. v. Double Eagle Corp., 17 A.D.2d 135, 232 N.Y.S.2d 901(1962) ........ 12
Mackenzie v. General Finance Corp., 102 N.Y.S. 710 (1951) ........ 4
States Marine Line v. Crooks, 13 N.Y.2d 206, 300, 245 N.Y.S.2d 581, 586 (1963) ........ 8

## Statutes

CPLR § 6201 ........ 10
CPLR §6212(e) ........ 3

## Legal Argument

### *I. One Million Dollars is an Appropriate Undertaking*

If the Court in its discretion determines that an attachment of property is appropriate, the defendant requests the attachment be conditioned upon the posting of a one million dollar undertaking.

Under New York State law, the plaintiff must furnish an undertaking on a motion for an attachment of not less than $500, and is liable to the defendant for "all costs and damages, including reasonable attorneys' fees, which may be sustained by reason of the attachment if the defendant recovers judgment or if it is finally decided that the plaintiff was not entitled to an attachment of the defendant's property." CPLR §6212(e). The amount of the undertaking is required in most courts to be 10% of the estimated value of the property to be attached. This also includes sheriff's poundage. CPLR 6212(b). The plaintiff is strictly liable for all damages caused by a wrongful attachment, and the liability is not limited by the amount of the undertaking. Id.

New York State Courts have previously set the amount of the plaintiff's undertaking at a number sufficient to cover the defendant's expenses if the defendant is ultimately successful at trial. These amounts include expenses properly incurred in maintenance of its defense(e.g. costs, disbursements, attorneys' fees) to protect the defendant from damages and costs arising from the attachment, sheriff poundage fees, premium on a surety bond given by the defendant to release the attachment[1], and contemplated expenditure for witness and attorneys' fees. See e.g. Mackenzie v. General Finance Corp., 102 N.Y.S. 710 (1951).

---

[1] A party may discharge an attachment by posting a bond. CPLR 6222. Typical bond fees are 10% of the amount secured. Additional damages result from having to post collateral to get the bond.

If the property attached is not the defendant's property, then there is more than typical risk of damage to the defendant. The third party owners may commence suit against the defendant alleging the defendant's activities caused the attachment of their property. The 3/25/08 John Whyte affidavit at paragraph 3 states significant foreclosure damages are likely if the Goshen property cannot be sold. One Million Dollars is a conservative estimate of the defendant John Whyte's potential damages resulting from the wrongful attachment of all the property the plaintiffs seek to attach[2], which property all parties currently concede is not currently titled to Mr. Whyte and was not owned by KW Construction.

The defendants submit the language of any undertaking should include that the compensable items for a wrongful attachment are reasonable attorneys' fees which may be sustained by reason of the attachment and which were incurred to free the property. The defendant John Whyte to date has been compelled to litigate to protect his interests in mitigating damages to third party owners of the real and personal property. The counsel fees incurred are the proximate result of the attachment. The undertaking should cover those legal costs as well as the anticipated legal costs resulting from the third party owner's litigating any potential cloud on their right to transfer or encumber the property.

The defendant suggests that the Court require the terms of the bond to be payable in the event the attachment is vacated.

---

[2] It is still unclear what property the plaintiffs seek to attach in this motion. The motion requests an order of attachment against the property of John Whyte. The motion goes on to include references to property not currently owned by Mr. Whyte. At oral argument held last month, the plaintiffs' counsel did not clarify whether the plaintiffs consent that the realty listed in the motion is not the subject of the order of attachment.

## II. Any Attachment Order Should Specifically Exclude the 17 Highland, Goshen, and Chappaqua Properties

At the 3/28/08 Hearing it was established that the following real property was currently not owned by Mr. Whyte and was never owned by KW Construction: 1. 1700 Route 17M, Goshen, New York ("Goshen Property"); 2. 225 Millwood Rd. , Chappaqua, New York ("Chappaqua Property"); 3. 17 Highland Avenue, Yonkers, New York ("17 Highland Property").

The plaintiffs seek only "an order of attachment against the property of defendant John Whyte"[3] individually. Any attachment order should contain language sufficient to advise the Sheriff what property is secured by the Order. If these properties are not excluded from the attachment order, the Sheriff might inadvertently levy against these properties not owned by John Whyte. Without an express exclusion the property owners could be deprived of the free use of the property, *i.e.* the order may be interpreted as a "cloud" on the title preventing the sale and transfer of the property, or interfering with any mortgage. This would likely expose John Whyte to liability to the owners of these properties. Needless litigation expense by the property owners may also result to clear title or clarify the application of the attachment order to the property. Indeed John Whyte has indicated that the corporation that owns the 17 Highland Property is attempting to sell the property to avoid foreclosure. If a sale is precluded by an attachment order the corporation may seek damages against Mr. Whyte regarding any impact to the marketability of the property.

[3] Plaintiffs' 1/25/08 Memorandum of Law, p. 2.

Because attachment is an extraordinary remedy, and because of the dearth of evidence to demonstrate the transfers of property were intentionally done to thwart the plaintiffs' ability to enforce the prior Judgment against KW Construction, Inc., the defendants respectfully request that any attachment order specifically exclude the Goshen Property, Chappaqua Property, and 17 Highland Property. This is particularly justified where, as here, the plaintiffs fail to produce a collective bargaining agreement or otherwise demonstrate they will succeed on the merits against Mr. Whyte individually. See CPLR 6212(a).

## *III. The Plaintiffs' Failure to Prove a Collective Bargaining Agreement Existed After June 2001 Justifies Denial of the Motion*

The documentary evidence does not establish a collective bargaining agreement existed past June 2001. The Plaintiffs' initial moving papers, Hanlon Affidavit, Exhibit 1 contain an unsigned document entitled "Independent Building Construction Agreement". Plaintiffs argue[4] Exhibit 1 was the successor agreement to Exhibit 3, the Interim Agreement. The Interim Agreement, Article II however refers to an agreement between the District Council and "the Association". The term "Association" presumably refers to one of several multiemployer collective bargaining associations (e.g. Walls and Ceilings Association, General Contractor's Association of New York-none of which KW Construction is a member) that negotiate collective bargaining agreements with the District Council. An Association agreement is different from the "Independent" agreement at Exhibit 1. The "Independent" agreement by its terms is an agreement between one employer and the District Council. At oral argument this author asked

[4] Plaintiffs 3/27/08 Reply Memorandum, page 4.

plaintiffs' counsel to indicate which of the several agreements between the District Council and the various associations the Interim Agreement refers to. He was unable to do so. The plaintiffs also proffer no other agreement signed after 2001 between KW Construction and the District Council, and no ratification argument for either Exhibit 1 or any other agreement in effect after 2001. Since without an agreement there would be no liability to contribute after 2001, the Court should deny the motion.

The case cited by the plaintiffs in support of the enforceability of the Interim Agreement, Seabury Construction Corp., 06 CV 2282(RWS), is distinguishable. In Seabury the employer signed an Interim Compliance Agreement binding the employer to that agreement until a new independent agreement was signed by the employer. The employer never signed a new agreement and the Court just held the Interim Compliance Agreement continued in effect until the new agreement is signed. In the instant action new association agreements have been signed since 2001. Therefore the interim compliance agreement does not continue to roll over through the present as in Seabury. The problem in this case is the Interim Compliance agreement does not specify which contract of several associations is the successor agreement. Each association has their own contract with their own terms and conditions of employment. Therefore the defendant argues the interim agreement expired when one of several association agreements were signed since 2001, but that the successor agreement is void for indefiniteness. See e.g. States Marine Line v. Crooks, 13 N.Y.2d 206, 300, 245 N.Y.S.2d 581, 586 (1963) ("If, therefore, the parties had made an agreement in which the wages were left to the will of one of them, or if such wages could not be readily ascertained by reference to objective factors, the agreement would not be enforceable,

and an arbitral award providing for such a wage structure would likewise be unenforceable."). This is not a case where the wages and employee benefits can be ascertained through a ministerial act. It is a profound flaw in the Interim Compliance Agreement that renders any successor agreement emanating therefrom unenforceable because it is impossible through review of the Interim Compliance Agreement or extraneous documents to determine which of several successor Association agreements applies. Nor is it acceptable to leave it to the District Council to "cherrypick" the successor Association Agreement.

Nor does the arbitration award attached at Hanlon Affidavit Exhibit 4 resolve this dilemma. That award only addresses fund delinquency claims through June 2003. The order of attachment seeks delinquencies through June 30, 2005. Any finding by the arbitrator as to the existence of a collective bargaining agreement is nonbinding since it is for the Court and not the arbitrator to determine whether a contract between the parties exists. See e.g. Int'l Union of Operating Engineers, Local Union 103 v. Indiana Cons. Corp., 13 F.3d 253 (7th Cir. 1994). Also AT&T Technologies, Inc. v. Comm. Wrkrs. of America, 475 U.S. 643, 651, 121 LRRM 3329 (1986). Moreover, the arbitrator only found an agreement in existence through 2003. This does nothing to establish an agreement through 2005.

The plaintiffs' ratification argument misses the mark. It argues the interim compliance agreement was ratified and therefore that was the agreement through at least 2005. This contradicts the plaintiffs' argument that the interim compliance agreement was followed by a successor agreement. The plaintiffs can't cure the indefiniteness of the Interim Compliance Agreement by arguing that agreement continued through

ratification. It could not since by its express terms it ceases when an Association agreement was signed and there is no dispute the District Council has signed association agreements since 2001. Mere payment of contributions standing alone does not result in a new agreement, since an employer is required by Section 8(a) (5) of the National Labor Relations Act to continue maintaining the status quo in contributions after expiration of a predecessor collective bargaining agreement. Plaintiffs' argument that KW Construction "remitted the proper benefit fund contributions"[5] cannot be confirmed since the plaintiffs can point to no agreement to confirm the contributions were "proper". The fact that KW may have paid some contributions in response to the arbitration award and judgment issued in this action does not establish a ratification of a new agreement. Plaintiffs' claim that the defendant ratified the agreement by participating in an audit and providing payroll records to the Funds is belied by the 10/28/05 Affidavit of Mr. Whyte[6], which demonstrates those records were produced as part of KW Construction's FRCP 26 discovery obligations in District Council v. KW Construction, 05 CV 4021 (JGK)(AJP). Production in that context is not tantamount to an acknowledgement of an agreement for the period at issue (which in that action the District Council only claimed an agreement through 2003). Whether Mr. Whyte volunteered his payroll records does nothing to establish his ratification of any collective bargaining agreement. Nor does the10/28/05 Whyte Affidavit contain an acknowledgement of the existence of any collective bargaining agreement past the Interim Compliance Agreement. Mr. Whyte's affidavit merely states "KW is signatory to a collective bargaining agreement" which could refer to the Interim Compliance Agreement. To interpret the word "is" to mean there is as of

---

[5] Plaintiffs' Reply Memorandum, page 5.
[6] Attached at Exhibit 16 to the Plaintiffs' initial moving papers.

the signing of that affidavit an agreement in effect is too strained a reading of the affidavit and does not amount to an admission of a successor agreement to the Interim Compliance Agreement. Indeed, even if Mr. Whyte was stating an agreement existed, which agreement was he referring to? The Interim Compliance Agreement, the successor association agreements, or was he mistaken? The indefiniteness of the Interim Agreement would not be cured by any statement by Mr. Whyte that he believed an agreement existed.

In sum, since there is no possibility of determining which of several multiemployer association collective bargaining agreements signed since 2001 was intended to be the successor agreement to the 7/1/01 Interim Compliance Agreement, the successor agreement is void for indefiniteness and the Court should deny the order of attachment.

## *IV. CPLR §6201(3) Requires a Present Intent to Remove or Dispose of Defendant's Assets to Frustrate the Defendant's Creditor's Rights*

At the 3/28/08 hearing the Court requested further briefing on the issue of whether the CPLR § 6201(3) requires a showing that a defendant is presently assigning, disposing of, encumbering or secreting property with intent to defraud his creditors or frustrate the enforcement of the judgment. The defendants argue that the plaintiffs have failed in their burden of proving facts sufficient to warrant an attachment under CPLR 6201(3) since: 1. The realty and bank accounts the plaintiffs seek to attach are not the defendant's realty or KW Construction's property; 2. there is no showing the defendant has disposed of or presently intends to dispose of his property with an intent to defraud the plaintiffs.

The drastic provisional remedy of attachment exists not to correct past transfers of assets that have been fraudulently transferred (the constructive trust cause of action is appropriate to remedy that claim) but to remedy any present intent to transfer assets to evade creditors. The commentary to CPLR 6201 makes this clear:

> Rather, attachment is available only when it is necessary for jurisdiction or when defendant is disposing of his property with intent to defraud creditors.

McKinney's CPLR 6201(1980) (emphasis added).

Moreover, it has been held that "only items of undisputed ownership in defendant should be held as security" under attachment order, and it was an abuse of discretion to hold items which were subjects of litigation as to their ownership. A.C.A. American Masters, Inc. v. Wertz, 45 A.D.2d 838, 839, 358 N.Y.S.2d 445, 445(1974).

The transfers of property referred to in the plaintiffs' moving papers all refer (with the exception of the Goshen property) to prior transfers. The plaintiffs have not established a present intent to transfer the Chappaqua or Highland properties or to dissipate bank accounts belonging to KW Construction or John Whyte. Therefore the attachment order should be denied as to this property.

When the defendant is a close corporation, and the ground of the attachment is that the defendant is fraudulently disposing of assets, it is imperative that the distinction between corporate and individually owned property be respected. If the corporation is the defendant, and those in control are disposing of corporate assets, no order of attachment may be issued against the individual property of the sole shareholders and officers. Eaton Factors Co., Inc. v. Double Eagle Corp., 17 A.D.2d 135, 232 N.Y.S.2d 901(1962). Eaton

stands for the proposition that the transfer of assets not subject to the creditor's claims are not assets subject to attachment. Where, as here, there is an allegation of the disposing of individual assets but no corporate assets, the Court should not issue an attachment order against the individual assets unless it can be demonstrated with a high degree of probability that the individuals will be held liable for the corporate debt. This cannot be established here since: 1. There is a genuine issue as to whether the collective bargaining relationship extended beyond the Interim Compliance Agreement; 2. even if the agreement did extend until 2005, the plaintiffs have not met their burden of demonstrating a likelihood that the individual defendants will be liable for this corporate debt.

The plaintiffs proffer of the shop steward statement can be disregarded by this Court since: 1. That statement alleges the act of paying the steward occurred years ago and not presently; 2. the allegation does not include an assignment or disposing or secreting of property otherwise available to the plaintiffs to enforce the judgment; and 3. it is hearsay and does not satisfy the "best evidence" rule. The plaintiffs' proffer of the Rivera affidavit does not assist them in meeting their burden of showing an intent by John Whyte to defraud his creditors by removing property. Assuming, arguendo, Mr. Rivera's allegation is true (Mr. Whyte completely disputes the steward's statements), the allegation demonstrates only an isolated instance of nonreporting years ago, not a present intent to defraud by secreting assets. Indeed the shop steward refers to no corporate assets in his statement. CPLR 6201's language requires the fraudulent intent must relate to the dissipation of assets. The plaintiffs attempt to meet this burden by showing dissipation of

non-KW Construction assets and a separate allegation of fraud unrelated to those assets. There is no showing of dissipation of assets with a contemporaneous fraudulent intent.

## *Conclusion*

For the foregoing reasons, the defendants request the Court deny the plaintiffs' motion, together with awarding the defendants the costs, disbursements and attorneys' fees associated with this motion and action and such other and further relief as to the Court may seem just and proper. If the Court in its discretion grants the motion the defendants request any order be conditioned on the posting by the plaintiffs of an undertaking in the amount of One Million Dollars.

White Plains, New York
April 18, 2008

Respectfully submitted,

**TRIVELLA, FORTE & SMITH, LLP**
Attorneys for the Defendants
**by: CHRISTOPHER A. SMITH (CS 9014)**
1311 Mamaroneck Avenue, Suite 170
White Plains, New York 10605
(914) 949-9075/949-4752(facsimile)