UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

THE NEW YORK DISTRICT COUNCIL OF
CARPENTERS PENSION FUND, *et al.*,

                         Plaintiffs,

  -v-

KW CONSTRUCTION, INC., as Successor
to KW GENERAL CONTRACTOR, INC.,
and JOHN WHYTE, d/b/a KW
CONSTRUCTION, INC., and JOHN
WHYTE, individually,

                         Defendants.

No. 07 Civ. 8008 (RJS)
MEMORANDUM AND ORDER

---

RICHARD J. SULLIVAN, District Judge:

      On March 7, 2008, plaintiffs submitted an *ex parte* application for an order of attachment of the assets of defendants John Whyte and KW Construction Inc. ("KW Construction"), of which Whyte is the sole owner.[1] On March 11, 2008, the Court denied plaintiffs' *ex parte* application without prejudice, and directed plaintiffs to serve defendants with their motion and supporting materials. Thereafter, following the submission of opposition and reply papers, the Court heard oral argument regarding plaintiffs' application on March 28, 2008. Subsequently, the parties submitted additional briefing regarding plaintiffs' application.[2] For the following reasons, the Court grants

---

[1] Plaintiffs are a number of employee benefit funds and one non-profit management corporation (collectively, the "Funds") associated with the District Council of New York City and Vicinity of the United Brotherhood of Carpenters and Joiners of America (the "Union"), a labor union. (*See* Compl. ¶ 5.)

[2] On March 19, 2008, the parties entered into a stipulation whereby defendants agreed to abstain from transferring property belonging to defendants as well as certain other properties that defendant Whyte purportedly held an interest in, pending the completion of a hearing on plaintiffs' application. (*See* March 19, 2008 Stipulation and Order.) By order dated March 28, 2008, the Court directed, on consent of the parties, that the Stipulation and Order

1

plaintiffs' application for an order of attachment.

## I. Legal Standard

Plaintiffs seek an order of attachment based on defendants' alleged failure to make payments owed to plaintiffs under a collective bargaining agreement ("CBA") between KW Construction and the Union. Pursuant to Federal Rule of Civil Procedure 64, New York law governs plaintiffs' application for an order of attachment. Under § 6212(a) of New York's Civil Practice Law and Rules ("CPLR"), a party may obtain an "order of attachment upon demonstrating that (1) it has stated a claim for a money judgment; (2) it has a probability of success on the merits; (3) the defendant 'with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts;' and (4) the amount demanded from the defendant is greater than the amount of all counterclaims known to the party seeking attachment." *Bank Leumi Trust Co. of N.Y. v. Istim, Inc.*, 892 F. Supp. 478, 481 (S.D.N.Y. 1995) (quoting N.Y. C.P.L.R. § 6201(3)); *see JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. and Trade Servs., Inc.*, 306 F. Supp. 2d 482, 485 (S.D.N.Y. 2004); *Trafalgar Power, Inc. v. Aetna Life Ins. Co.*, 131 F. Supp. 2d 341, 346 (N.D.N.Y. 2001). Here, it is undisputed that plaintiffs have satisfied the first and fourth elements. For the following reasons, the Court finds that plaintiffs have also satisfied the second and third elements of the above-cited standard and, therefore, grants plaintiffs' application for an order of attachment against defendants.

---

remain in effect pending resolution of plaintiffs' application. (March 28, 2008 Order.)

## II. Discussion

### A. Probability of Success on the Merits

To show a probability of success on the merits for purposes of an application for an order of attachment, the moving party must demonstrate that it is more likely than not that it will succeed on its claims. Specifically, plaintiffs must show "proof stronger than that required to establish a *prima facie* case." *Thornapple Associates, Inc. v. Sahagen*, No. 06 Civ. 6412 (JFK), 2007 WL 747861 at *4 (S.D.N.Y. March 12, 2007) (internal quotation marks and citation omitted).

Plaintiffs have demonstrated that they are likely to succeed in proving that defendant John Whyte failed to make contributions to plaintiffs required under the CBA that covered the period 2001 through 2006 (the "2001 CBA"), and that Whyte defrauded plaintiffs of certain contributions owed to them under the 2001 CBA. Specifically, plaintiffs have offered sufficient evidence to support a finding that they are likely to succeed in demonstrating that (1) Whyte and KW Construction have failed to satisfy their obligations under the 2001 CBA based on an affidavit from a forensic accountant recounting defendants' failure to do so (*see* Polvere Aff. ¶ 10), and (2) Whyte made false statements to plaintiffs regarding the actual amount of overtime worked by covered employees — thus defrauding the Funds of contributions owed under the 2001 CBA — based on an affidavit from a former employee of Whyte's who attests to falsifying overtime records at Whyte's direction (*see* Hanlon Decl., Ex. 12 (affidavit of Bienvenido Rivera)).

Plaintiffs are also likely to succeed in showing that Whyte is personally liable for the acts of KW Construction. It is undisputed that there is no record demonstrating that KW Construction was incorporated in New York State, or in any other jurisdiction (*see* Hanlon Decl. ¶ 21), and defendants have failed to offer any evidence demonstrating that KW Construction is, in fact, an

independent corporate entity.  Therefore, it appears that plaintiffs will likely succeed in holding Whyte liable for his acts taken in the name of KW Construction, a purported corporation wholly owned and controlled by Whyte that, based on the record before the Court at this time, has never been formally incorporated as an independent corporate entity.

Moreover, even assuming *arguendo* that KW Construction was an independent corporate entity, plaintiffs have sufficiently established that Whyte ignored corporate formalities and that the corporate veil should be pierced in this action.  Specifically, plaintiffs have presented evidence that Whyte commingled assets between the corporate and personal accounts, and stripped KW Construction of assets that could have been used to satisfy judgments obtained by plaintiffs against the company.  (Polvere Aff. ¶¶ 19-24); *see JSC*, 306 F. Supp. 2d at 486; *Godwin Realty Assocs. v. CATV Enterp., Inc.*, 712 N.Y.S.2d 39, 41 (N.Y. App. Div. 2000) ("The stripping of corporate assets by shareholders to render the corporation judgment proof constitutes a fraud or wrong justifying piercing the corporate veil.").

Defendants argue that plaintiffs cannot establish a likelihood of success on the merits as to their claims regarding defendants' failure to abide by the 2001 CBA because they have failed to establish that defendants agreed to abide by the 2001 CBA.  Specifically, defendants point out that, in support of their application, plaintiffs have submitted an *unsigned* copy of the 2001 CBA to which defendants purportedly agreed.  (Defs' Supp. Mem. at 7; *see* Hanlon Decl. Ex. 1.)

However, while the 2001 CBA is not signed by defendants, plaintiffs have also submitted evidence of other agreements between the Union and defendants that sufficiently establish that defendants were bound to abide by the 2001 CBA. Specifically, plaintiffs have submitted copies of (1) a CBA for the period from July 1, 1996 through June 30, 2001 (the "1996 CBA") that was

signed by Whyte on behalf of KW Construction (*id.* Ex. 2); and (2) an "Interim Compliance Agreement" dated May 16, 2001 (the "Interim Agreement") that was likewise signed by defendant Whyte on behalf of KW Construction (*id.* Ex. 3). The Interim Agreement provides, in relevant part, that defendants and the Union "have agreed to extend our current [1996 CBA]," which "shall remain in full force and effective until [the Union] negotiates the successor Agreement with the Association [] whose members perform work similar to the work performed by [KW Construction]." (*Id.*) In addition, pursuant to the Interim Agreement, when the Union "concludes negotiations with the Association[] whose members perform work similar to the work performed by [KW] Construction, all terms and conditions of the newly negotiated Agreement . . . shall be binding on [KW Construction] . . . .." (*Id.*)

Thus, plaintiffs assert that the plain language of the Interim Agreement binds defendants to the 2001 CBA executed by the Union and the "Association of Wall, Ceiling, and Carpentry Industries of New York" (the "Wall Association"), which purportedly performs work similar to that of KW Construction. (Pls.' Supp. Mem. at 13-14.) In response, defendants assert that the Interim Agreement is vague, and therefore unenforceable, because it "does not specify which contract of several associations is the successor agreement." (Defs.' Supp. Mem. at 8.)

The Court finds that plaintiffs have sufficiently demonstrated that "the Association" referenced in the Interim Agreement refers to the Wall Association. The Interim Agreement defines "the Association" as one "whose members performs work similar to the work performed" by KW Construction. (Hanlon Decl. Ex. 3.) Thus, the Interim Agreement plainly contemplates that KW Construction would be bound by any further agreement adopted by such an association. Plaintiffs plausibly assert, and offer sufficient evidence in support, that KW Construction "does wall and

5

ceiling construction" and is, therefore, bound by successive agreements, such as the 2001 CBA, executed by the Wall Association and the Union. (*See* Guidice Decl. ¶ 13; Hanlon Decl. Ex. 23.) Defendants fail to offer any evidence to the contrary, to argue, even in a conclusory fashion, that KW Construction does some work other than "wall and ceiling construction," or to point to any other Association that "performs works similar to" KW Construction. (Hanlon Decl. Ex. 3.) Therefore, on the basis of the record before the Court, it is clear that the Interim Agreement bound KW Construction to the terms of any successive CBAs, including the 2001 CBA, executed by the Wall Association and the Union.

Moreover, even assuming *arguendo* that the Interim Agreement, by itself, did not bind KW Construction to the 2001 CBA, the Court finds that, although the 2001 CBA was not signed by Whyte on behalf of KW Construction, defendants' conduct during the period from 2001 through 2006 demonstrates their intention to be bound by that agreement. Specifically, based on the record before the Court at this time, it is clear that defendants "availed [themselves] of the benefits" of the 2001 CBA — namely, by hiring Union members — and, at least in part, "complied with [its] terms," thereby implicitly adopting the agreement through their conduct. *See Seabury Const. Corp. v. District Council of New York and Vicinity of United Broth. of Carpenters and Joiners of America*, 461 F. Supp. 2d 193, 198 (S.D.N.Y. 2006); *see Service Employees Int'l Union, Local 32BJ v. Coby Grand Concourse, LLC*, No. 04 Civ. 9580 (CSH), 2006 WL 692000, at *4 (S.D.N.Y. March 16, 2006) (finding that, although the defendant company failed to sign the CBA at issue, it "did, in fact, *implicitly* assume the CBA, primarily by acting in conformity with the provisions and obligations of that agreement in all respects") (emphasis in original).

Plaintiffs have proffered overwhelming and unrebutted evidence demonstrating that, since

2001, KW Construction and Whyte have availed themselves of the opportunity to hire members of the Union at rates set forth in the 2001 CBA, and acted in accord with the terms of the 2001 CBA by, for example, complying with the various rate increases set forth therein (Guidice Decl. ¶¶ 15-16), permitting the Funds, on several occasions, to audit KW Construction's books and records in accord with the terms of the 2001 CBA (Polvere Decl. ¶¶ 5-6, 8), and participating in the arbitration of disputes regarding their conduct under the CBA (Hanlon Decl. Ex. 4 (Arbitrator's Opinion and Award)). Indeed, since 2003, Whyte, apparently acting on behalf of KW Construction, has appeared at six arbitration hearings regarding a dispute between the Funds and KW Construction as to the alleged nonpayment of contributions owed to the Funds under the 2001 CBA. (*See id.*) It is undisputed that, throughout the course of those arbitration proceedings, neither Whyte nor KW Construction raised any objection to the arbitrator's jurisdiction based on Whyte's failure to sign the 2001 CBA. (*See id.*) More broadly, it is undisputed that, prior to the oral argument before this Court on March 29, 2008, neither Whyte nor KW Construction had previously asserted that it was not bound by the 2001 CBA.

Accordingly, the Court finds that plaintiffs have sufficiently demonstrated a probability of success on their claims regarding defendants' failure to abide by the terms of the 2001 CBA.

### B. Transfers of Assets with the Intent to Defraud or Frustrate Judgment

As to the third element, the Court finds that plaintiffs have sufficiently demonstrated that Whyte, in his individual capacity and acting on behalf of KW Construction, has transferred or disposed of assets with the intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiffs' favor. The Honorable Denny Chin, District Judge, has identified a non-exhaustive list of factors indicative of a transferor's intent to defraud his creditors:

> Because "[f]raudulent intent is rarely susceptible to direct proof," *In re Kaiser*, 722

> F.2d 1574, 1582 (2d Cir. 1983), plaintiffs often seek to prove intent to defraud circumstantially by proof of certain "objective facts" — "badges of fraud" — that give rise to an inference of intent to defraud. *See BFP v. Resolution Trust Corp.*, 511 U.S. 531, 540-41 (1994). Among these "badges" are: 1) gross inadequacy of consideration; 2) a close relationship between transferor and transferee; 3) the transferor's insolvency as a result of the conveyance; 4) a questionable transfer not in the ordinary course of business; 5) secrecy in the transfer; and 6) retention of control of the property by the transferor after the conveyance. *See BFP*, 511 U.S. at 541; *Cadle Co. v. Newhouse*, No. 01 Civ. 1777 (DC), 2002 WL 1888716, at *5 (S.D.N.Y. Aug. 16, 2002). Of course, the flip side of these badges of fraud is that their absence — or evidence that fair consideration was paid, the parties dealt at arm's-length, the transferor was solvent, the transfer was not questionable or suspicious, the transfer was made openly, or the transferor did not retain control — would constitute evidence that there was no intent to defraud. The existence of actual intent to defraud is never presumed, and intent to defraud cannot be found "based merely on suspicion, conjecture, or doubtful inference." *Lowendahl v. Baltimore & Ohio R. Co.*, 287 N.Y.S. 62, 76 (1st Dep't 1936); *accord Rosenthal v. Rochester Button Co.*, 539 N.Y.S.2d 11, 12-13 (1st Dep't 1989).

*Lippe v. Bairnco Corp.*, 249 F. Supp. 2d 357, 374-75 (S.D.N.Y. 2003). Other courts have similarly identified *indicia* of fraud, including "the family, friendship or close associate relationship between the parties; [the] retention of possession, benefit or use of the property in question [by the debtor]; . . . the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and [] the general chronology of the events and transactions under inquiry." *United States v. Mazzeo*, 306 F. Supp. 2d 294, 312 (E.D.N.Y. 2004) (quoting *In re Kaiser*, 722 F.2d 1574, 1582-83 (2d Cir. 1983)) (internal quotation marks omitted).

Based on these principles, as well as the evidence proffered by plaintiffs regarding defendants' conduct, the Court finds, for the reasons set forth on the record at oral argument as well as the reasons set forth below, that the fraudulent intent element is satisfied so as to merit an order of attachment in this case. The unrebutted evidence submitted by plaintiffs demonstrates that, since approximately March 2004, Whyte has repeatedly transferred his personal assets as well as the assets

of KW Construction to family members or close business associates for little to no consideration, at or near the time when plaintiffs have (1) initiated arbitration proceedings to obtain monies allegedly owed by defendants to the Funds, (2) threatened legal action to collect on the default judgment, or (3) commenced litigation in this Court seeking to collect on that judgment. (*See* Pls.' Mem. at 5-9.) Specifically, this evidence consists of (1) a deed, whereby Whyte transferred his interest in a property to a business associate for no consideration, that was executed at the same time that Whyte was participating in an arbitration proceeding commenced by the Funds to recover unpaid contributions from KW Construction and three months prior to the entry of a default judgment against KW Construction in that proceeding (Hanlon Decl. Ex. 7); (2) two deeds, whereby Whyte transferred his interests in two properties to his wife for a consideration of $10 (*id.* Exs. 10-11), that were executed within two months of the arbitrator's entry of a default judgment against KW Construction and within one month of Whyte's receipt of a letter from the Funds' counsel warning that the Funds would initiate litigation to collect on the default judgment (*see id.* Ex. 9); and (3) copies of two checks drawn on the account of KW Construction and signed by Whyte, whereby Whyte transferred $25,000 and $40,000 from KW Construction to other corporations owned and controlled by Whyte, that were dated one and two months, respectively, after the Funds filed suit against KW Constructions, (*id.* Ex. 14-15). Moreover, plaintiffs have established, and defendants do not dispute, that, shortly before or after the commencement of this action, Whyte began to offer for sale a property that was previously purchased for $1.3 million by another corporation owned and controlled by Whyte. (*See* Davies Decl.)

  In response to plaintiffs' submissions on the fraudulent intent element, defendants argue that § 6201(3) "requires a showing that a defendant is <u>presently</u> assigning, disposing of, encumbering

or secreting property with intent to defraud . . . ,'' and that plaintiffs have failed to make any showing that defendants are presently transferring assets with an intent to defraud plaintiffs. (Defs.' Supp. Mem. at 11 (emphasis in original).)  However, even apart from the fact that plaintiffs offer at least one example of Whyte's *present* intent to sell a property owned by a corporation under his control, defendants' argument lacks merit.  Specifically, defendants fail to offer any persuasive authority in support of such a limited reading of § 6201(3).  Rather, the plain language of § 6201(3) provides that "[a]n order of attachment may be granted" where the defendant "*has assigned, disposed of, encumbered or secreted* property, or removed it from the state or is about to do any of these acts . . . ." (emphasis added).  Moreover, the overwhelming weight of authority in New York State courts and courts in this District favors the view that § 6201(3) may be satisfied where the plaintiff merely demonstrates *past* fraudulent transfers by the defendant.[3]  *See, e.g., Bank Leumi Trust Co.*, 892 F. Supp. at 482; *Mineola Ford Sales Ltd. v. Rapp*, 661 N.Y.S.2d 281, 282 (N.Y. App. Div. 1997); *Bd. of Educ. of City of New York v. Treyball*, 446 N.Y.S.2d 417. 417 (N.Y. App. Div. 1982).

### C. Plaintiffs' Undertaking

"On a motion for an order of attachment, the plaintiff shall give an undertaking . . . ." N.Y. C.P.L.R. § 6212(b).  Here, plaintiffs seek to post an undertaking of $50,000.  Defendants ask that plaintiffs' post an undertaking of $1,000,000.  The Court finds that, pursuant to § 6212(b), an undertaking of $50,000 is appropriate under the circumstances of this case, where plaintiffs seek to attach defendants' assets up to the amount of $1,114,185.18.  *See, e.g., Considar, Inc. v. Redi Corp.*

---

[3] The Court declines to resolve the parties' dispute as to the specific properties that are owned by defendants, and therefore subject to the attachment order.  Rather, the Court shall issue an order permitting plaintiffs to attach any "funds, monies, personal or real property and/or interest in property" of defendants.  Any disputes as to the scope and implementation of the attachment order may be resolved through the procedures prescribed by New York law.  *See* N.Y. C.P.L.R. §§ 6219-6224.

plaintiff sought to recover $542,000); *Garden City Irrigation, Inc., v. Donna Salamanca*, 801 N.Y.S.2d 234 (table), 2005 WL 927001, at * (N.Y. Sup. Ct. Apr. 18, 2005) (directing the plaintiff to post an undertaking of $500 where it sought to recover $150,000); *S.M. Pires v. Frota Oceanica Brasileria, S.A.*, 800 N.Y.S.2d 354 (table), 2005 WL 579500, at *5 (N.Y. Sup. Ct. Jan. 14, 2005) (directing the plaintiffs to post an undertaking of $100,000 where they sought to attach the defendants' assets up to the amount of $4,176,539.54). Moreover, the Court notes that CPLR § 6212(e) provides that "[t]he plaintiff shall be liable to the defendant for all costs and damages, including reasonable attorney's fees, which may be sustained by reason of the attachment if the defendant recovers judgment, or if it is finally decided that the plaintiff was not entitled to an attachment of the defendant's property," and that the "[p]laintiff's liability shall not be limited by the amount of the undertaking."

### III. Conclusion

For the foregoing reasons, the Court grants plaintiffs' application for an order of attachment of defendants' assets. The Court has attached the Order of Attachment to this Memorandum and Order.

SO ORDERED.

DATED:  New York, New York
        May 14, 2008

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE